# RANKIN v. COLLINS.

.CONTRACTS; OFFER AND ACCEPTANCE.

1. Where a contract is sought to be established through an offer and acceptance, it is essential that the minds of the parties should have met upon a definite proposition; and if a certain, definite offer be submitted by letter or telegram, and accepted, before withdrawal, without condition or change of terms, there is a contract.

2. The words "with time concession can close immediately," contained in an alleged written offer, are not necessarily equivalent to saying that "with time concession will close immediately," and where the surrounding circumstances show they were not so intended, they do not constitute such a certain, definite offer that, when unconditionally accepted as made, they will constitute a binding contract between the parties; and especially is this true where the subsequent conduct of the parties shows that they did not consider such contract as having been made.

No. 2471.   Submitted March 5, 1913.   Decided April 7, 1913.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on verdict for the defendant, directed by the court, in an action to recover damages for breach of a contract for the purchase of certain land scrip.                              *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment entered against the appellant, John M. Rankin, plaintiff below, upon a verdict for defendant, Jeremiah Collins, returned by direction of the court.

The action of the plaintiff was to recover the sum of $52,000 for the breach of a contract for the purchase of 26,000 acres of forest lieu land scrip issued to the Santa Fe Railway Company.

Rankin's right to the scrip was founded in a contract for its purchase contained in the following letter and acceptance:

March 2, 1910.

Messrs. Britton & Gray,
      Glover Building, City.
Gentlemen:—

Referring to the several interviews we have recently had concerning the purchase of the unrestricted forest reserve rights of the Santa Fe Pacific Railroad Company, I beg to submit the following offer:

I will purchase at $10 per acre, the entire present holdings of the company of the character named above, less such acreage that may be retained exclusively for company use.

This is upon the understanding that the entire acreage, after deducting what the company will retain for its own use, will be approximately 26,000 acres.

Delivery of one half of the area to be made in not less than thirty days, and of the remainder in not less than sixty days after the company's acceptance hereof, through you, or some bank in this city.

Each full section of such rights to be surrendered in the following denominations, *viz.:*

One 160-acre deed,

Three 80-acre deeds, and

Six 40-acre deeds.

Very sincerely yours,<br>Jno. M. Rankin.

March 9, 1910.

John M. Rankin, Esq.,

    Maryland Building, Washington, D. C.

Dear Sir:—

We are to-day in receipt of a telegram from Mr. Howel Jones, land commissioner of the Santa Fe Pacific Railroad Company, authorizing us to accept the offer made by your letter of March 2, 1910, for the purchase of approximately 25,000 acres of the unrestricted forest lieu rights of that company. We accordingly notify you of the above, with suggestion that the time for delivery mentioned in your original offer will begin from this date.

Very truly yours,<br>Britton & Gray.

Britton & Gray were duly authorized to act for the railway company.

Rankin it appears had some talk with Collins, who was then in Washington, regarding the assignment of this contract, and addressed him the following letter:

March 14th, 1910.

Hon. Jeremiah Collins,

    Collins-Guerry Bldg., City.

My dear Mr. Collins:—

I am inclosing herewith copy of my proposition of the 2d inst. to the Santa Fe Pacific Railway Company for the purchase of all of its unrestricted forest reserve rights, and a copy of letter from Messrs. Britton & Gray, the company's at-

torneys, dated the 9th inst., accepting said proposition. The time begins to run from the 9th inst. Of course, you will appreciate the necessity of giving me your definite answer at the earliest possible moment, so that, if you should not care to handle the deal, I may have ample opportunity to submit it to my French clients, who will sail this week and be in New York some time next week.

This is all the correspondence that has passed between me and the company on this subject, although, as you understand, I had several interviews on the subject with Mr. Howel Jones, in conjunction with Messrs. Britton & Grey, prior to and on the date of my letter of the 2d inst.

I hereby confirm our verbal understanding that I will turn this deal over to you at $12 per acre, provided you will undertake to handle it upon the conditions mentioned in the correspondence between myself and the company's attorneys. Of course, I expect you to give me your definite answer at the earliest possible moment, for the reasons indicated above.

Hoping for your own sake, as well as for my own, that you will be able to put this deal through, I am,

Yours very sincerely,<br>John M. Rankin.

Collins, in the meantime, having returned to Montana, the following telegrams and one letter (omitting several of no pertinency) were exchanged between the parties:

Night Letter.

March 23, 1910.

Hon. Jeremiah Collins,
        Helena, Montana.

The first half of the lot will be here this week, ready for delivery if you want it ahead of time. Am advised it will all be in the smaller denominations. Would like your definite reply by wire by the twenty-fifth instant if possible.

John M. Rankin.

(3)

Jeremiah Collins,
       Helena, Montana.
    What do you intend to do? Please answer immediately.
Important.                                John M. Rankin.

(5)

Hon. Jeremiah Collins,
          Helena, Montana.
    Telegram of yesterday not intended to be unduly pressing.
I had been advised that the first consignment would be here
next Friday and asked direct question concerning acceptance
and payment. Hence my direct question to you. Would ap-
preciate full and specific reply as soon as possible.
                                          John M. Rankin.

(7)
                              Helena, Montana, March 31st.
John M. Rankin,
       Maryland, Washington, D. C.
    Have been out of town, and finding difficulty raise so much
money this time of year when banks demands are heaviest
am still working can you modify terms to deliver half within
the thirty days and balance in equal lots every thirty days for
five months six per cent interest deferred payments try it.
                                        Jeremiah Collins.

(8)
                                        April 2d, 1910.
Jeremiah Collins,
       Helena, Montana.
    Party declines extension asked. Intimates might agree to
deliver first half April ninth, one fourth May twentieth and
balance June seventh with six per cent interest from May
twentieth. Would this suit you? Please answer definitely
to-day.                                   John M. Rankin.

216 RANKIN *v.* COLLINS.

(9)

Helena, Montana, April 2d.

John M. Rankin,

Maryland Building, Washington, D. C.

Extension suggested would hold (help) some but would like second and third delivery May twenty and July one this would almost cinch the deal, try let me know Monday will advise definitely Wednesday.                    Jeremiah Collins.

(10)

April 4, 1910.

Jeremiah Collins,

Helena, Montana.

Jones says prefers not approach Ripley for extension until good faith is evidenced by paying for first half which is now here.    Then no doubt May twentieth and July 1st will be granted.    Fact is they regret this deal, because could have peddled more than half at much better price.

Payment first half required here ninth inst.    Must be prompt.    Please answer definitely immediately.

John M. Rankin.

(12)

Helena, Montana, April 6, 1910.

J. M. Rankin,

Maryland Building, Washington, D. C.

Success hanging in the balance.    Cannot advise definitely until to-morrow afternoon has been uphill task on account of the Volestead bill and general fear of hostile legislation.

Jeremiah Collins.

(13)

April 7th, 1910.

Hon. Jeremiah Collins,

Helena, Montana.

Am authoritatively and positively assured neither Volstead nor any other hostile legislation possible.    Thirteen thousand

and three and forty nine hundredths acres now in American Security Trust Company this city subject my order.    Make payment there and wire me same time.     John M. Rankin.


(14)

Helena, Montana, April 7.

John M. Rankin,

Maryland Building, Washington, D. C.

My first Waterloo on scrip deal.   Sorely disappointed in result.   Most important party weakened last moment.   See no hope in two days remaining.   With more time and better terms could yet succeed, but feel no warrant to urge same.   If possible get concession in time and terms.   Make first delivery one fourth and balance easy as possible.   Would like opportunity to win.                        Jeremiah Collins.


April 8, 1910.

Jeremiah Collins,

Helena, Montana.

Acting your assurances obligated myself to purchase.   Concession in price impossible.   While not certain might secure delivery thirteen thousand fifteenth instant, one fourth May twentieth, one fourth July 1st.   Certainly nothing better and will not ask this unless advised definitely you can and will close if these terms secured.   Prompt answer important.

John M. Rankin.


(17)

Helena, Montana, April 8, 10.

Mr. John M. Rankin,

Washington, D. C.

Dear Mr. Rankin:—

This is simply to confirm my telegram of last night and to express further regret as to the failure of our deal.   We have certainly worked hard enough to get it through and thought for some time that we would be successful.   This is a very con-

siderable sum of money to raise in a small community or even in a Western State. I think there would have—no trouble at all only for the fear that something in the way of adverse action may be taken by Congress or by the Department. . . .

Another obstacle was the particular season of the year. At this time our bankers have the greatest demand for funds and do not like to go into side deals requiring a large amount of money, as it might interfere with the proper care of other regular customers. If it had been three months later there would really have been no trouble in raising the money.

Our bank offered to finance the deal if better terms could be secured such as those indicated in my telegram of last night; namely delivery of one fourth at the present time and the remainder in monthly instalments. I suppose the company would not agree to such a proposition, but if they do, I am sure we can get away with it.

I can hardly express my regret over the failure of this deal. I was most anxious to secure this block of scrip, but of course did not have the means to handle it without very considerable help from others. I would have notified you much earlier only that I was really hopeful of success up to about three o'clock yesterday. We had one party who proposed to take the whole proposition, that is to finance it and he had the matter under consideration for three or four days. He consulted with his attorneys and I have no doubt that threw cold water on the proposed investment for the reason perhaps that they really knew nothing about it. This was one of the prominent bankers and wealthiest men of the State, who could have financed the deal without feeling it. I fully appreciate the fact that you are a loser by this result and regret it very much on that account. But I want you to understand that I did the very best possible. Hoping something may come of it to you, if not to us, I beg to remain.

Very truly yours,
Jeremiah Collins.

(18)

Helena, Montana, April 9, 10.

J. M. Rankin,

Maryland Building, Wash., D. C.

We can handle half and have other party working to take rest looks like we can come through with extension suggested. Will stay with it.                    Jeremiah Collins.

(19)

Helena, Montana, April 10, 10.

John M. Rankin,

1903 Kal. Road. Wash., D. C.

Go to Denver tonight.   Expect perfect financial arrangement by fifteenth other payments May twenty and July one get the extension.                    Jeremiah Collins.

(20)

April 10, 1910.

Jeremiah Collins,

Helena, Montana.

If you will take entire deal, pay for first half immediately, pay six per cent interest on deferred payment, and pay me one dollar an acre as sales are made, I will make hard fight for six months time on second half.   answer today if possible.

John M. Rankin.

(21)

Billings, Montana, 10.

Jno. M. Rankin,

Maryland Building, Washington, D. C.

Telegram phoned here.   Can handle all on time arrangement suggested, as profits must be divided in three cannot stand the commission will pay twenty five cents an acre as sold return to Helena tonight can probably close this basis.   Answer Helena.

Jeremiah Collins.

(22)

April 10, 1910.

Jeremiah Collins,
    Helena, Montana.

Twenty five cents no inducement.  One dollar an acre on
entire lot as sold necessary to secure extension.  Please under-
stand I am acting under definite instructions and at same time
trying to help you land entire deal.  Final answer Monday
forenoon essential.                        John M. Rankin.

(23)

Helena, Mont. 11.

John M. Rankin,
    Maryland Bldg., Wash. D. C.

Your proposition impossible cannot finance deal at advance
cost.  We give twenty five cents out our share profits with time
concession can close immediately.        Jeremiah Collins.

(24)

April 12, 1910.

Jeremiah Collins,
    Helena, Montana.

Your proposition accepted.  Payment first half must be
made tomorrow Wednesday.  Wire me when made and in-
struct Trust Company about delivery.

                        John M. Rankin.

(25)

Helena, Mont., April 13, 1910.

John M. Rankin,
    Maryland Bldg., Wash., D. C.

Money in Union Bank & Trust Co. Helena.  Have scrip for-
warded this bank payment immediately on receipt.  Also send
agreement as to second lot delivery six months.  American
Security can wire Union Bank about money.  People inter-
ested with me want scrip in bank here before payment.  Hope

this arrangement will be acceptable. Certainly not unreasonable. Has been hard pull and am gratified with result, your account well as mine.                        Jeremiah Collins.

(26)

April 13, 1910.

Jeremiah Collins,
        Helena, Mont.

As you know agreement required payment here last Saturday. Situation critical, fear loss deal if ask delivery in Helena. You know company will correct any error or deficiency. Hence no good ground your request and strongly advise unconditional payment here tomorrow. assured smooth sailing after first payment.                        John M. Rankin.

Helena, Mont., April 14.

John M. Rankin,
        Maryland Building, Wash., D. C.

Guerry's report not received until seven o'clock satisfactory company make good any duplicated basis. Did not get all money in bank until three o'clock and then immediately wired. Requirement scrip be sent our bank natural for people advancing money who do not fully understand. Would not personally insist do not let this slight variation defeat deal union bank and trust company will confirm money is available. Letter from Britton & Gray will suffice as to six months time second lot.                        Jeremiah Collins.

(28)

April 14, 1910.

Jeremiah Collins,
        Helena, Montana.

Company has wired order to return scrip. If you want it payment necessary before three o'clock today. Again assure you satisfactory treatment and am speaking advisedly. Cut your strings or we will lose deal.        John M. Rankin.

(29)

Helena, Montana, 14.

John M. Rankin,

Maryland Bldg., Washington, D. C.

Union Bank just wired you will honor draft scrip attached and remit eastern exchange without cost four parties in deal who insist on payment this way see Britton and Gray and try arrange it our parties right from business standpoint and are immovable dont let deal fail now.

Jeremiah Collins.

(32)

April 14, 1910.

Jeremiah Collins,

Helena, Montana.

Wired Jones this morning. He answers Copeland has wired Union Bank. If their answer satisfactory will forward scrip.

John M. Rankin.

(33)

April 14,

John H. Rankin,

1903 Kalo. Road.

Copeland Treasurer Topeka telegraphs Union Bank disclosing price of scrip ten dollars it has queered the deal. My parties absolutely refuse to stand the commission. Can't go further that basis.

Jeremiah Collins.

The testimony showed that the scrip had been sent to the American Security & Trust Co., Washington, for delivery to Rankin, and was returned to the railway company on April 19, 1910.

Plaintiff introduced the following letter, the signature to which was proved to have been written by Collins.

Helena, Montana, Apr. 18, '10.

Mr. Howell Jones, Land Commissioner,

   Topeka, Kansas.

Dear Sir:—

   We wired you as follows to-day, now confirming the same. "quote 5,000 acres scrip small surrenders." You doubtless understand that we had some negotiations through a Washington party for the purchase of practically the amount of scrip which the company has remaining. There was a question of securing time on part of the money, which seems to have been finally decided upon, but we never got anything very definite on the subject. There was also a difference as to where the money should be paid, our banker desiring that payment should be made on receipt of the scrip with draft attached. In the course of the proceedings it developed that the Washington party was disposed to be rather hoggish in the way of a commission. Not satisfied with $2 an acre, he had the gall to demand another dollar in consideration of securing six months time on one half of the amount. When these facts developed we very promptly dropped the whole matter and refused to go further with it.

   We had the funds in the bank to pay for one half the scrip and arrangements perfected to make the final payment within the time agreed upon; but when we discovered what was going on we naturally dropped the matter. We could have handled the deal very nicely and are really sorry that we could not under the circumstances go through with it. We thought it only fair and proper to make this explanation.

Very truly yours,

The Collins Land Co.

Per J. C.

   Alexander Britton, of the firm of Britton & Gray, testified that on April 12 Rankin told him Collins wanted the extension of time, and "could not get his people to put up the necessary money without it." Witness authorized Rankin to say that the extension would be granted. Witness had no nego-

tiations with Collins. Sent him no telegram or letter. Rankin admitted that in sending the copy of his contract with the railway company to Collins, he wrote $12 per acre instead of $10, as the amount of his offer to the company. Said that he was not trying to deceive Collins. The motive was simply to conceal what his purchase price was. Had had many transactions with Collins. "He had offered to pay $12 for the scrip, and I had been able to buy it at $10 an acre. I sent him those copies to show him that I had a contract with the company, which was a good contract, upon which he could proceed with his arrangements to get the money to close." The change was "simply to cover up what my commission was." Collins knew a profit was made, or ought to have known it. He l new from their former dealings that he (Rankin) was making a profit, but did not know how much.

Some other testimony is omitted, as having no bearing on the question in issue.

*Mr. Charles L. Frailey, Mr. A. S. Worthington,* and *Mr. John W. Yerkes* for the appellant.

*Mr. Charles A. Douglas, Mr. Gibbs L. Baker, Mr. Thomas Ruffin,* and *Mr. Hugh H. Obear* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

Where a contract is sought to be established through an offer and acceptance, it is essential that the minds of the parties shall meet upon a definite proposition. If a certain, definite offer be submitted by letter or telegram, and accepted before withdrawal, without condition or change of terms, there is a contract.

The plaintiff's contention is that the telegram of April 11 (No. 23 above) contained such a definite, certain offer, and that the same was unconditionally accepted as made, by his telegram in reply, April 12 (No. 24). His argument is that the words of defendant's telegram, "with time concession can

close immediately," are equivalent to saying that with the time concession he will close immediately. It is true that whatever contract may have been finally concluded must be found in the two telegrams referred to. The surrounding circumstances disclosed by the other telegrams and letters may, however, be more or less helpful in ascertaining the meaning of the defendant's telegram No. 23, which plaintiff accepted in his reply telegram No. 24. The learned trial justice, in directing the verdict, expressed the opinion that defendant's telegram No. 23 did not make a definite, certain offer, the acceptance of which would make a contract. His conclusion was that the defendant meant thereby that, with the concession in price and time, he could or would be able to close a contract for purchase. He also expressed the opinion that there was, at that time, no certain date of extension fixed or agreed upon; and, moreover, that the six months' extension, if agreed to by the railway company's representative, had never been communicated to defendant. We see no reason to differ with his conclusion that telegram No. 23 was not such a certain, definite offer of purchase the acceptance of which concluded a contract. It is true that the words "can close" may, under certain circumstances, be regarded as meaning the same thing as "will close;" but the circumstances disclosed here seem to indicate a different meaning. While the plaintiff and the defendant, only, would be bound by the contract of purchase and sale, if made, the plaintiff was not the owner and possessor of the shares, but was, in fact, assigning his contract with the railway company. Any extension of time or change of the place of delivery were dependent upon its consent. On the other hand, as plaintiff well knew, the defendant's ability to purchase depended upon his ability to induce the other persons to take an interest under any contract he might make, and to advance the large sum of money required. His telegrams and letters showed this, and plaintiff stated the fact to Britton. Defendant was evidently anxious to make the purchase at the price named, but the sum of money was large and not readily secured; and for this he was dependent upon satisfying his

associates. Their undertaking was with him, and they were not bound to him by any offer of his to the plaintiff, unless made by their authority, or with their approval. In the light of this situation, disclosed by all the surrounding circumstances, it was quite natural that he should use the words "can close" instead of "will close," advisedly; intending thereby to convey the meaning that, with certainty as to the 25-cent commission and the time extension, he believed he would be able to procure the approval of his associates, and their immediate advancement of the necessary cash payment.

As illustrating Collin's situation and meaning, attention is called to telegrams preceding No. 23. See first, Rankin's telegram of April 8 (No. 15) the concluding words of which are "Will not ask this (referring to a short extension) unless advised definitely you can and will close if these terms secured." In telegram (21) of the 10th, Collins said, "can handle all on time arrangement suggested. As profits must be divided in three cannot stand commission. Will pay twenty five cents an acre as sold. Return to Helena tonight. Can probably close this basis." Rankin replied: "Twenty five cents no inducement. One dollar an acre on entire lot sold necessary to secure extension. Please understand I am acting under definite instructions and at the same time trying to help you land entire deal." It was to this that Collins replied (telegram 23), standing out for 25 cents commission, and saying: "With time concession can close immediately." Collins, however, found that he could not close on that basis, as shown by the subsequent telegrams. While himself willing for the scrip to be paid for and delivered in Washington, his associates demanded delivery in Helena; they wanted the scrip in hand when they parted with their money. They also demanded that the agreement for the extension be sent at the same time. Plaintiff replied that "the agreement required payment here (Washington) last Saturday," and that he feared loss of deal if delivery be asked at Helena. He advised payment here, to-morrow, and concluded: "Assured smooth sailing after first payment." The agreement referred to could mean none other than that

between plaintiff and the railway company as the agreement claimed with defendant could only have been made by the acceptance of the day before, which was Tuesday. So far, too, there had been no statement of an agreement by the railway company to the six months' extension of time for the second payment; and plaintiff's telegram of April 14, requiring payment as necessary before 3 o'clock, contained this only: "Again assure you satisfactory future treatment, and am speaking advisedly. Cut your strings or we will lose the deal." During this subsequent negotiation relating to delivery there was no intimation by Rankin that he considered the contract closed by his telegram of acceptance (No. 24). On the contrary, both parties seemed to act upon the idea that no contract had been closed, and that Collins was still trying to bring his associates to a conclusion. On the same day, when defenddant's associates learned that plaintiff had contracted for the scrip at $10 per acre instead of $12, as stated in his purported copy of his contract with the railway company, they refused to go on with the contract.

The learned justice is also right in saying that at the time of the telegram of acceptance no certain time of extension of the deferred payment had been fixed. Previous telegrams relating to extensions mentioned different periods, but none as long as six months. In a former telegram of 10th (No. 20), Rankin, in making an offer, had said he would make " a hard fight for six months' time on second half;" and this was replying to one of Collins's of same day. (No. 19), who, announcing that he was starting to Denver, said, "expect perfect financial arrangement by fifteenth other payments May twenty and July one. Get the extension."

It seems, however, that Collins must have finally understood in some way that the time extension would be six months, for he asked that the agreement therefor be sent along with the scrip; and stated that a letter from Britton & Gray to that effect would be sufficient. It does not appear that this was the definite certain time of extension demanded by one party and accepted by the other. In two telegrams of Rankin after

the contract, according to his view, had been concluded, which had been sent in an effort to secure the actual close by payment, he assures "smooth sailing after first payment," and "satisfactory future treatment." Not once does he say that the extension agreement had been obtained, or that Britton & Gray had written the latter, granting it. Rankin's purpose in making the contract with the railway company was to assign it at a profit, and this he undertook to do to Collins. While he, alone, was dealing with Collins, both knew that the extension of time for payment was not within his power, but must be obtained from the railway company. Although it appears that Britton & Gray, as the company's representatives, had notified Rankin on the 12th that the extension would be granted, no such extension was executed, and there was no notice given Collins that it had been consented to, much less executed. Upon the whole, we agree with the trial court that the correspondence between the parties does not show a contract between them, and he did not err in directing the verdict.

The judgment is affirmed with costs.        *Affirmed.*